UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUSAN GUILMETTE,<br>Plaintiff<br><br>V.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA, UNUMPROVIDENT CORPORATION & STRATUS COMPUTER INC., a wholly owned subsidiary of Ascend Communications, Inc. GROUP LONG TERM DISABILITY PLAN<br>Defendants | CIVIL ACTION NO.<br><br>**04-40201** |

**COMPLAINT**

**INTRODUCTION**

1.  Plaintiff, Susan Guilmette ("Ms. Guilmette"), brings this action against Defendants, Unum Life Insurance Company of America ("Unum"), UnumProvident Corporation ("UnumProvident") and Stratus Computer, Inc., a wholly owned subsidiary of Ascend Communications, Inc. Group Long-Term Disability Plan ("Plan") (collectively referred to as "Defendants") for violation of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA"). Ms. Guilmette is a participant in an ERISA welfare benefit plan that is underwritten and insured by Unum. The name of the welfare benefit plan is the Stratus Computer, Inc., a wholly owned subsidiary of Ascend Communications, Inc. Group Long-Term Disability Plan. The Policy number is 108591 003.

1

2. This Complaint challenges the Defendants': 1) unreasonable and unlawful denial of Ms. Guilmette's long term disability ("LTD") income benefits despite the substantial medical evidence demonstrating Ms. Guilmette's qualifications for said benefits; 2) pattern of rejecting and/or ignoring the substantial evidence supporting Ms. Guilmette's total disability pursuant to the terms of the Plan; 3) failure to provide Ms. Guilmette with a full and fair review of her claim; and 4) failure to provide a reasonable claims procedure that would yield a decision on the merits of Ms. Guilmette's claim.

3. Ms. Guilmette is filing this action to recover benefits due under the Plan, to enforce the present rights existing therein, to clarify rights under the terms of the Plan, and to recover costs and attorneys' fees as provided by ERISA.

## JURISDICTION

4. This court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e)(2) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Plan is administered in this district.

## PARTIES

5. Ms. Guilmette is a 52 year old woman who currently resides at 300 Wilson Street, Clinton, Massachusetts.

6. Ms. Guilmette is a vested participant in a Unum employee benefit plan, within the meaning of 29 U.S.C. § 1002(2)(7). Ms. Guilmette has standing to bring this action under 29 U.S.C. § 1132(a).

7. The defendant, Unum, is a for-profit corporation with its principal place of business at 2211 Congress Street, Portland, Maine. Unum transacts business in

Massachusetts and underwrites the Plan under which Ms. Guilmette is suing. Unum is the party responsible for processing the claims made under the Plan and making a final determination as to Plan participants' eligibility for LTD benefits.

8. At all times relevant to the claims asserted in this Complaint, Unum purported to act as an ERISA claims fiduciary with respect to participants of the plan, generally, and specifically, with respect to Ms. Guilmette, within the meaning of ERISA.

9. The defendant, UnumProvident Corporation, is a for-profit corporation with its principal place of business at 1 Fountain Square, Chattanooga, TN 37402. UnumProvident Corporation conducts business in Massachusetts and is the holding company for Unum, the party responsible for insuring the Plan under which Ms. Guilmette is suing.

10. The Plan under which Ms. Guilmette is suing is a "long term disability plan" issued by Unum to Stratus Computer, Inc., a wholly owned subsidiary of Ascend Communications, Inc., a Massachusetts company with its principal place of business at 111 Powdermill Road, Maynard, Massachusetts. The Plan number is 292000.

## STATEMENT OF FACTS

### Insurance Entitlement, Definitions of Disability, Discretion

11. From 1990 through 1999, Ms. Guilmette worked in software engineering at Stratus Computer, Inc. ("Stratus"), in Marlborough, Massachusetts, as a Software Quality Manager, Program Manager, Software Engineering Integration and

      Release Manager, Software Quality Engineer, and Software Quality Process Consultant.

12. As an employee of Stratus, Ms. Guilmette was provided with LTD benefits under a contract of insurance between Stratus and Unum.

13. Ms. Guilmette paid the premiums for her Stratus Plan.

14. Unum both funds and administers the Plan under which Ms. Guilmette is suing.

15. Under the terms of the Plan, Ms. Guilmette is entitled to receive 60% of her monthly earnings to a maximum benefit of $20,000 a month until she turns 65 years old.

16. Under the terms of the Plan, "disability" is defined as follows:

    You are disabled when Unum determines that:

- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your sickness or injury; and

- you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

    (Emphasis in original.)

17. The Plan further states:

    You will continue to receive payments beyond 60 months if you are also:

- working in any occupation and continue to have a 20% of more loss in your **indexed monthly earnings** due to your sickness or injury; or

- not working and, due to the same sickness or injury, are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

    (Emphasis in original.)

18. The Plan also states: "We may require you to be examined by a doctor, other

4

medical practitioner and/or vocational expert of our choice. Unum will pay for this examination. We can require an examination as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Unum Representative."

19. "Regular Occupation" is defined under the Plan in the following manner: "Regular occupation means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location."

20. The Plan provides claimants with 60% of their monthly earnings, minus all deductible sources of income, including but not limited to, the amount of Social Security Disability Income ("SSDI") benefits.

21. Except for the terms defined above, the Plan contains no other definition or explanation for the terms "disability."

**Ms. Guilmette's Claim For LTD Benefits**

22. Ms. Guilmette has presented a timely claim to the Defendants, asserting that she is an insured person, that she became disabled while insured, and that she is entitled under the Plan to LTD benefits for the period of time beginning October 1999, when she became totally disabled, and continuing thereafter without interruption through to the present, and continuing in the future until she reaches the age of 65 or is no longer disabled.

**Ms. Guilmette's Medical History**

23. At the time she became disabled, Ms. Guilmette's occupation was a Software Quality Process Consultant at Stratus.

24. Ms. Guilmette currently suffers from Fibromyalgia ("FMS"), Chronic Fatigue Syndrome ("CFS"), Hypothyroidism, Irritable Bowel Syndrome ("IBS") and Gastric Reflux.

25. The combination of symptoms from these illnesses, which include chronic debilitating exhaustion; unrefreshing sleep; muscle restlessness; muscle pain, burning, aches, stiffness, and weakness; short-term memory loss; poor concentration, problems with word-retrieval and comprehension; slurred speech; stuttering; confusion; impaired coordination and fine motor skills; chronic sore throats and swollen glands; headaches; dizziness; vertigo; palpitations; and shortness of breath, renders Ms. Guilmette unable to perform the duties of her occupation or any occupation.

26. In the early 1990's, following a car accident, Ms. Guilmette was diagnosed with Fibromyalgia.

27. At this time, Ms. Guilmette self-treated her pain and numbness with ibuprofen, chiropractic treatments, massage therapy, myofacial-craniosacral therapy, and acupuncture.

28. Ms. Guilmette also explored her symptoms, including fatigue, with her primary care physician, Dr. Robert Sumner. As result of a difficult home situation, including a massive stroke suffered by her husband, Dr. Sumner recommended psychotherapy to help Ms. Guilmette prepare for her husband's expected death.

29. Ms. Guilmette met with the psychiatrist, Dr. Mitchell Wangh, in January 1992. He, too, felt that Ms. Guilmette's fatigue could be simply explained as a natural consequence of the circumstances of her life. Depression was a normal reaction to Ms. Guilmette's husband's illness and expected death.

30. In the following years, Ms. Guilmette continued to meet with her psychiatrist regarding her husband's illness as well as her demanding work environment. Ms. Guilmette's husband died in April 1994.

31. In 1997, Ms. Guilmette became increasingly more severely fatigued. As months passed, her symptoms and suffering continued to worsen.

## Elimination of Depression as a Diagnosis and Exploration of the Diagnoses of Fibromyalgia and Chronic Fatigue Syndrome

32. In late spring 1999, Dr. Wangh and Ms. Guilmette met regarding her exhaustion and worsening symptoms, which were not lessened with rest or sleep. Dr. Wangh urged Ms. Guilmette to explore her diagnosis of Fibromyalgia with the correct specialists, because he was of the conclusion that her symptoms were not due to depression.

33. Unum's review of Ms. Guilmette's claim confirmed that Ms. Guilmette's benefits were payable for a physical illness, not a mental health diagnosis.

34. In May 1999, Ms. Guilmette made an appointment with the internationally recognized Fibromyalgia/Chronic Fatigue Syndrome expert and rheumatologist, Dr. Don. L. Goldenberg. However, Dr. Goldenberg did not have any appointments available for new patients until October 1999.

35. Due to the wait to see Dr. Goldenberg, Ms. Guilmette saw Dr. Allen Marks who confirmed Ms. Guilmette's earlier diagnosis of Fibromyalgia, adding Chronic

Fatigue Syndrome (CFS) to the diagnosis. Dr. Marks reviewed Ms. Guilmette's medications and noted that Ms. Guilmette was already taking medications he would recommend. He stated that he had no further treatment to offer.

36. When Ms. Guilmette finally saw Dr. Goldenberg, confirmed Ms. Guilmette's diagnoses, suggested medication changes, and made treatment recommendations for her psychiatrist and primary care physician to prescribe and monitor. He suggested that Ms. Guilmette visit him for annual check-ups.

**Application for Disability Benefits**

37. In October 1999, after multiple years of having tried every way conceivable way to continue to work and to support herself, Ms. Guilmette was forced to stop working. Prior to ceasing work, Ms. Guilmette attempted innumerable therapies and accommodations to continue to work, including switching jobs to less demanding positions, working fewer hours and taking extended leaves of absence. Unfortunately, Ms. Guilmette's condition continued to progress, forcing her to cease work effective October 5, 1999.

38. Ms. Guilmette received short-term disability benefits from October 6, 1999 to April 4, 2000.

39. Unum approved Ms. Guilmette's claim for short-term disability benefits for the remainder of the elimination period, on March 1, 2000.

40. On April 21, 2000, Unum approved Ms. Guilmette's claim for LTD benefits.

41. Ms. Guilmette's benefit amount was $4,883.36.

42. On May 26, 2000, Unum approved Ms. Guilmette's Group Life Insurance during her period of Total Disability. Ms. Guilmette's life insurance benefit was

approved in the amount of $196,000, and was scheduled to continue in force without premium payments beginning on July 5, 2000, until she was no longer disabled.

43. On July 3, 2002, Unum wrote Ms. Guilmette informing her that it was in the process of reviewing her claim for benefits.

44. On January 13, 2003 and February 7, 2003, Ms. Guilmette underwent neuropsychological testing at Unum's request with Nancy Hebben, Ph.D.

45. On April 25, 2003, Unum wrote Ms. Guilmette terminating her claim for benefits, on the basis that "the medical evidence in the file does not support your claimed level of impairment." In particular, Unum noted that "[t]here is very little objective support for your complaints and conditions."

46. On August 1, 2003, Ms. Guilmette, through counsel, appealed Unum's denial of her claim.

47. On September 30, 2003, Unum upheld its denial of Ms. Guilmette's claim on the basis of a new review not previously disclosed to Ms. Guilmette. This medical report concluded that Ms. Guilmette's "reported symptoms are not credible."

## Ms. Guilmette's Attempt To Perfect Her Appeal And Unum's Breach Of Its Fiduciary Duty

48. On November 17, 2003, Ms. Guilmette, through new counsel, wrote Unum requesting a complete copy of Ms. Guilmette's claim file.

49. On November 26, 2003, Unum disclosed Ms. Guilmette's claim file to counsel for Ms. Guilmette.

9

50. On or about July 13, 2004, Ms. Guilmette, through counsel, submitted to Unum additional information regarding her total disability pursuant to the terms of the Plan.

51. Understanding that Unum's denial of Ms. Guilmette's claim was based upon the erroneous conclusion that Ms. Guilmette's complaints were "not credible," Ms. Guilmette submitted a sworn affidavit attesting to her symptoms, medical history and treatment for her condition.

52. In addition, Ms. Guilmette submitted an independent vocational examination that she underwent with a nationally-renowned vocational expert. This expert certified Ms. Guilmette's inability to perform the material and substantial duties of any occupation.

53. Additionally, a review of Unum's claim file revealed that Unum relied upon an erroneous interpretation of Ms. Guilmette's treating and examining physicians' records to deny Ms. Guilmette's benefits. In light of this error, Ms. Guilmette's treating physicians also submitted detailed reports and updated medical records regarding Ms. Guilmette's restrictions, limitations and symptoms in an effort to clarify their opinions regarding Ms. Guilmette's total disability.

54. The new information submitted by Ms. Guilmette specifically responded to the information compiled by Unum and disclosed to Ms. Guilmette following the September 30, 2003 denial of her claim.

55. Ms. Guilmette also sent a copy of her July 2004 submission to Thomas Watjen, the CEO of UnumProvident, for review.

56. In response to Ms. Guilmette's July 2004 submission, Nick McKelvy of Unum

wrote counsel for Ms. Guilmette on July 20, 2004, indicating that Unum would not review or consider the additional information submitted on Ms. Guilmette's behalf "as the administrative record is closed." Mr. McKelvy returned the documents sent by Ms. Guilmette's for Unum's consideration with his July 20, 2004 letter.

57. On August 6, 2004, counsel for Ms. Guilmette wrote Mr. McKelvy returning the July 20, 2004 submission and noting that Unum's conduct in refusing to consider Ms. Guilmette's submission was contrary to established precedent, as well as unreasonable under ERISA and the Department of Labor's ERISA claim regulations.

58. On August 18, 2004, Richard Josephs, Complaints Specialist at Unum, wrote counsel for Ms. Guilmette indicating that Unum had abided by ERISA and that "no further information will be reviewed or considered for your client's claim."

59. On August 20, 2004, counsel for Ms. Guilmette wrote Mr. Josephs describing Unum's fiduciary responsibilities under ERISA and noting that the documents are necessarily part of the administrative record, as Unum does not have the right to make a determination as to the scope of the administrative record.

60. On August 23, 2004, Mr. McKelvy wrote counsel for Ms. Guilmette indicating that Unum would not review the additional information as "the administrative record is closed."

61. On August 24, 2004, counsel for Ms. Guilmette wrote Mr. McKelvy indicating that Unum's unilateral determination of what constituted the administrative record in this matter was a violation of Unum's fiduciary duty under ERISA.

62. On August 30, 2004, Mr. McKelvy wrote counsel for Ms. Guilmette indicating that the "record is closed."

63. On September 13, 2004, Mr. Josephs wrote counsel for Ms. Guilmette noting that the "record is closed."

64. Unum has agreed to reopen its administrative review for other claims.

65. Unum has treated Ms. Guilmette differently, and in a less advantageous manner, than other claimants covered under its LTD plans.

**Ms. Guilmette's Current Medical Condition**

66. Ms. Guilmette continues to see her doctors for treatment and medications.

67. Ms. Guilmette has undergone and/or continues to pursue all recommended treatment for Fibromyalgia and CFS.

68. Ms. Guilmette's symptoms have continued to worsen since her last day of work.

69. The termination of Ms. Guilmette's LTD benefits created tremendous financial stress, which in turn exacerbates her symptoms.

**Social Security Disability**

70. Ms. Guilmette currently receives Social Security Disability Income ("SSDI") benefits on the basis of her inability to work in any occupation.

71. Ms. Guilmette's claim for SSDI benefits was approved after the submission of her application without the need to engage in any appeals.

72. Ms. Guilmette's SSDI benefit was offset from her Unum monthly LTD benefit.

**Unum's Review of Ms. Guilmette's Claim**

73. Despite the complexity of Ms. Guilmette's condition, Unum only sought independent verification of Ms. Guilmette's cognitive symptoms, which present only a small part of Ms. Guilmette's overall disabling symptoms.

74. At no time during its administrative review of Ms. Guilmette's claim did Unum call Ms. Guilmette's treating physicians to discuss the nature and extent of Ms. Guilmette's illness and disability.

75. Unum failed to request updated medical information regarding Ms. Guilmette's claim prior to terminating her claim. The medical information upon which Unum made its decision to terminate Ms. Guilmette's benefits was almost one year old.

76. Unum failed to provide Ms. Guilmette with a full and fair review of her claim for benefits.

77. Unum's failure to provide a full and fair review of Ms. Guilmette's claim for benefits is exemplified by Unum's misrepresentation of the medical opinion of Ms. Guilmette's treating physicians and its misrepresentation of the nature and severity of her symptoms.

78. Any discretion to which Defendants may claim they are entitled under the Plan is negated by their failure to provide Ms. Guilmette with an explanation as to their adverse action and a full and fair review of her claim for benefits.

79. The Defendants have failed to their burden of establishing that Ms. Guilmette's condition had changed to such a degree that she was no longer totally disabled under the terms of the Plan.

80. The self-serving nature of the Defendant's decision that Ms. Guilmette is no longer disabled is illuminated by the fact that Ms. Guilmette's condition has not

changed, but in fact, has only worsened, since the Defendants first accepted liability on her claim for benefits.

81. The self-serving nature of the Defendants' decision to deny Ms. Guilmette's benefits is further illuminated by their reliance upon selected pieces of the medical evidence to terminate Ms. Guilmette's benefits and its refusal to consider the additional evidence submitted in support of Ms. Guilmette's claim.

82. The decision to deny Ms. Guilmette's benefits was wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the Plan and contrary to law.

83. Unum was influenced by its financial conflict of interest, as both the administrator of the plan and the payor of benefits thereunder, when it terminated Ms. Guilmette's benefits.

84. Due to the unlawful denial of benefits under ERISA, Ms. Guilmette has lost her rightful long-term disability benefits. She has also suffered emotional distress and humiliation as a result of Unum's actions.

85. Ms. Guilmette has also lost her life insurance policy, issued and insured by Unum, as a result of Unum's decision that she was not disabled. Unum's review regarding Ms. Guilmette's eligibility for waiver of her premium for her life insurance policy on the basis of her disability, was conducted simultaneously with Unum's review of Ms. Guilmette's eligibility for LTD benefits.

86. Due to the unlawful denial of benefits under ERISA, Ms. Guilmette has also lost the use of her long-term disability benefits.

87. Having exhausted the administrative procedures provided by Unum, Ms. Guilmette now brings this action.

### FIRST CAUSE OF ACTION
### (Enforcement of Terms of Plan
### Action for Unpaid Benefits)
### (ALL DEFENDANTS)

88. Ms. Guilmette realleges each of the paragraphs above as if fully set forth herein.

89. The Plan is a contract.

90. Ms. Guilmette has performed all of her obligations under the contract.

91. 29 U.S.C. § 1132(a)(1)(B) states that:

   A civil action may be brought ---

   (1) by a participant or beneficiary –

   (A) for the relief provided for in subsection (c) of this section, or

   (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

92. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

93. The Defendants unlawfully denied Ms. Guilmette's benefits in part by: (1) rejecting, without any basis, the substantial evidence supporting Ms. Guilmette's claim for disability; and (2) denying Ms. Guilmette a full and fair review of their decision to deny her benefits.

94. In accordance with 29 U.S.C. §1132, Ms. Guilmette is entitled to be paid benefits under the Plan based upon her disabled status from and after April 25, 2003, and continuing into the present.

95. The Defendants have refused to provide Ms. Guilmette with these disability benefits and is, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

96. As a direct and proximate result of this breach, Ms. Guilmette has lost the principal and the use of her rightful LTD benefits.

## SECOND CAUSE OF ACTION

### (Attorneys' Fees and Costs)
### (ALL DEFENDANTS)

97. Ms. Guilmette realleges each of the paragraphs above as if fully set forth herein.

98. Under the standards applicable to ERISA, Ms. Guilmette deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

99. The Defendants have the ability to satisfy the award.

100. Ms. Guilmette's conduct of this action is in the interests of all participants suffering from physical conditions who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

101. The Defendants have acted in bad faith in denying Ms. Guilmette's benefits under the Plan.

102. The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1) Declare, adjudge and decree that Ms. Guilmette is entitled to ongoing LTD benefits as calculated under the terms of the Plan.

(2) Award Ms. Guilmette the full amount of unpaid benefits under the Plan to which she is entitled, together with such pre-judgment interest as may be allowed by law.

(3) Order that the Defendants make restitution to Ms. Guilmette in the amount of any losses sustained by Ms. Guilmette in consequence of the wrongful conduct alleged herein, together with prejudgment interest.

(4) Award Ms. Guilmette the costs of this action and reasonable attorneys' fees; and

(5) Award such other relief as the court deems just and reasonable.

Date: October 6, 2004                                  Respectfully submitted for the Plaintiff,

By: _____
Mala M. Rafik
BBO No. 638075
ROSENFELD & RAFIK, P.C.
44 School Street, Suite 410
Boston, MA 02108
617-723-7470

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
SUSAN GUILMETTE

**DEFENDANTS**
UNUMPROVIDENT CORPORATION, UNUM LIFE INSURANCE COMPANY OF AMERICA, STRATUS COMPUTER INC., A WHOLLY-OWNED SUBSIDIARY OF ASCEND COMMUNICATIONS, INC. GROUP LONG TERM DISABILITY PLAN

(b) County of Residence of First Listed Plaintiff  WORCESTER
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Mala M. Rafik
Rosenfeld & Rafik, P.C.
44 School Street, Suite 410
Boston, MA 02108
(617) 723-7470

Attorneys (If Known)

**04-40201**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury- Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing Accommodations / Habeas Corpus: ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | ☒ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 550 Civil Rights / ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

The Plaintiff files this action under ERISA, 29 U.S.C. §1132(a) to recover disability benefits due her under her long-term disability plan administered by UnumProvident Corporation and Unum Life Insurance Company of America.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 10-6-04
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUN _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**04-40201**

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)_____ Susan Guilmette v. Unum Life Insurance Company of America

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___  I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X_  II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.
             *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

   ___  III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

   ___  IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

   ___  V.   150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

   _____N/A_____

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

   YES ☐    NO **X**

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?   (SEE 28 USC §2403)

   YES ☐    NO **X**

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

   YES ☐    NO **X**

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

   YES ☐    NO **X**

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

   YES **X**    NO ☐

   A.  IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

       EASTERN DIVISION ☐    CENTRAL DIVISION ☐    WESTERN DIVISION ☐

   B.  IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

       EASTERN DIVISION ☐    CENTRAL DIVISION **X**    WESTERN DIVISION ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME    MALA M. RAFIK

ADDRESS    ROSENFELD & RAFIK, P.C., 44 SCHOOL STREET, SUITE 410, BOSTON, MA 02108
TELEPHONE NO.    (617) 723-7470

(Guilmette Catergory Form.wpd - 11/27/00)